C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
ERIK WHITE,                                              :
                                                         :
                                                         :  **MEMORANDUM DECISION AND**
                                        Petitioner,      :  **ORDER**
                                                         :
            - against -                                  :  20-cv-6029 (BMC)
                                                         :
                                                         :
SUPERINTENDENT J. HARPER,                                :
                                                         :
                                                         :
                                        Respondent.     :
                                                         :
-------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his state court conviction, upon his guilty plea, to eight felony counts of second degree rape and sixteen felony counts of second degree criminal sexual act, one misdemeanor count of endangering the welfare of a child, and three misdemeanor counts of second degree criminal contempt. Additional facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, petitioner pled guilty to having repeatedly raped and sexually abused his 13-year-old daughter throughout 2014, and having repeatedly violated an order of protection prohibiting contact with her. After his daughter testified against him at trial (by which time she was 14 or 15), the trial court offered, over the prosecutor's vehement objection, to accept a plea agreement whereby petitioner would plead to the indictment, and the trial court would sentence him to a total of seven years' custody followed by ten years post-release supervision (petitioner already had a prior conviction as a sex offender). Petitioner accepted the plea agreement and allocuted in detail to the crimes charged.

Once petitioner pled guilty and the jury was discharged, what followed was either a bad case of buyer's remorse, or a strategic determination that petitioner's daughter would not be able to bring herself to testify against him if there was a second trial (as she told the prosecutor). Both prior to and after sentencing, petitioner contended on appeal and in multiple motions and collateral proceedings that there were numerous defects in the proceedings leading up to his guilty plea, including ineffective assistance of counsel, and that his plea allocution was not adequate to show that he was voluntarily and knowingly pleading guilty. The state courts rejected all of these challenges, and petitioner filed the instant petition.

The handwritten habeas corpus petition does not comply in any way with Rule 2(d) of the Rules Governing Section 2254 Cases, making it hard to decipher. The many motions and briefs that petitioner filed in state court, sometimes raising the same or related issues multiple times, are equally difficult to untangle. The District Attorney, in opposing, has attempted to characterize and separate the particular claims that were raised in state court and in the instant habeas petition. I have done the same thing, although I characterize petitioner's claims somewhat differently than has the District Attorney. Each of the claims as I view them is discussed below.

**I.     Involuntariness of guilty plea by reason of ineffective assistance**

The gist of most of petitioner's state court motions and his habeas petition is that his guilty plea was not voluntary because it was given under duress. The basis for the duress, according to petitioner, was that his attorney had done such a poor job in preparing the case that after his daughter testified, he had no real choice but to plead guilty. Had his attorney adequately prepared the case, there would have been a basis for impeaching his daughter's testimony, and challenging his indictment on various grounds, and petitioner would not have been forced to

2

plead guilty. Petitioner's claim of lack of voluntariness is thus intertwined with a claim that his counsel was constitutionally ineffective.

### A. **Voluntariness** *per ipsum*

In his counseled brief on direct appeal, petitioner contended that the state court erred in denying his prior motion to withdraw his guilty plea on the ground that his trial counsel's ineffectiveness rendered the plea involuntary. The trial court had denied the motion because

> During the plea proceeding, upon the court's inquiry, the defendant stated that he understood and spoke English, and the court had him duly sworn in. The defendant was fully apprised of his rights and the rights that he would be giving up by pleading guilty to the charged offense. Furthermore, the defendant specifically responded to the court's questions that he had not been promised anything to make him plead guilty, and that he was not forced, pressured or coerced to plead guilty. The defendant clearly answered that he was pleading guilty voluntarily and of his own free will. In addition, the defendant did not object to the sentence this court was promising. More importantly, it was the defendant who asked to take a plea mid-trial, which this court granted over the People's objection. It clearly was the defendant's decision to enter into a guilty plea. The defendant unequivocally demonstrated that he was fully aware of the plea proceeding and the implications of his guilty plea.

(Citation omitted).

Petitioner's appellate counsel, in challenging this ruling, argued that petitioner's plea was not voluntary and that he had received ineffective assistance of trial counsel. In addition, in his *pro se* brief on direct appeal, petitioner also argued that his attorney was ineffective for not adequately investigating the case. Petitioner's *pro se* brief made a number of allegations based on evidence that was not in the record in an effort to show that his daughter's testimony at trial was subject to impeachment had counsel undertaken a proper investigation.

The Appellate Division, affirming the trial court, ruled that:

A motion to withdraw a plea of guilty is addressed to the sound discretion of the

3

> court, and its determination generally will not be disturbed absent an improvident exercise of discretion. When a defendant moves to withdraw a guilty plea, the nature and extent of the fact-finding inquiry rests largely in the discretion of the Judge or Justice to whom the motion is made and a hearing will be granted only in rare instances. Here, the record supports the Supreme Court's determination that the defendant's plea of guilty was entered knowingly, voluntarily, and intelligently.

People v. White, 185 A.D.3d 842, 842, 125 N.Y.S.3d 286, leave to app. denied, 35 N.Y.3d 1116, 158 N.E.3d 541 (2020) (citations omitted). As to the claims of ineffective assistance in petitioner's *pro se* brief, the Appellate Division held:

> The defendant's contention in his pro se supplemental brief that he was deprived of the effective assistance of counsel cannot be reviewed on direct appeal because it is based on matters outside the record on appeal. The appropriate vehicle for review of such a contention is a motion pursuant to CPL 440.10.

Id. at 843 (citations omitted).

To the extent petitioner's habeas corpus petition seeks review of this ruling, the question of whether a plea of guilty was entered voluntarily is a mixed question of law and fact. See Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir. 1986). For the plea to be voluntary, the defendant must at least have been competent to proceed and must have been aware of the true nature of the charge against him. Id. The defendant's competence is a question of fact, while the question of whether a plea was voluntary is a question of federal law. Id. at 544.

This record demonstrates that petitioner's plea was knowing and voluntary. The allocution petitioner made under oath shows that he fully understood and accepted the consequences of his guilty plea, and, just as importantly, that he admitted, in graphic detail, to committing the heinous crimes against his daughter as charged in the indictment.

On direct appeal, petitioner argued that the promptness by which he sought to withdraw his plea illustrated that it was involuntary. However, what mattered was that the motion to

withdraw the plea had been made after the jury had been discharged. That meant that if the court granted the motion, it would have to hold a new trial before a newly impaneled jury. Most importantly, it would mean that petitioner's daughter would have to subject herself to reliving the crimes by testifying again. As often happens with victims of sexual abuse, she told the prosecutor that was not something she could or would do, and the prosecutor relayed that to the trial court. The Appellate Division found, in effect, that petitioner's cynical strategy was not grounds for withdrawing his guilty plea, and affirmed the trial court.

It is not as if petitioner pled guilty without knowing the consequences of his plea, or that he learned additional facts after he pled guilty which he didn't know at the time, or that his attorney gave him inaccurate advice about the choice he was making. At the point during the trial when he pled guilty, he was facing the choice between continuing with the trial with whatever chance of acquittal he had; exposure to decades in prison if he was convicted by the jury; and seven years in prison if he pled guilty. He wasn't happy with having to make that choice, but few defendants who plead guilty are happy with the choices they have. Having to choose between three bad options, and picking the one that he perceived to be the least bad, does not constitute the kind of "duress" that renders a plea involuntary.

The only "defect" that petitioner alleges in his plea allocution was that the trial court did not ask him if he was satisfied with his counsel. No case holds that such an inquiry is constitutionally required. Whether a guilty plea is voluntary is determined by all of the facts and circumstances surrounding the plea, and satisfaction with one's attorney is not a *sine qua non* of a voluntary plea. Even admitting guilt (which petitioner did in spades) is not constitutionally required for a defendant to voluntarily plead guilty. See generally North Carolina v. Alford, 400 U.S. 25 (1970). It follows that, even if the trial court had inquired as to petitioner's satisfaction

5

with his counsel, and petitioner had stated that he was not satisfied, the trial court could have found that the plea was still voluntary, as it represented petitioner's choice to plead guilty notwithstanding any dissatisfaction with his lawyer.

Accordingly, I agree with the state courts' conclusion that petitioner's guilty plea was knowing and voluntary.

### B. Ineffective assistance of trial counsel

Petitioner alleged a multitude of trial counsel errors and omissions in state court that he contends constituted ineffective assistance of counsel.[1] In his first motion to vacate his guilty plea due to ineffective assistance, the trial court expressly rejected his argument as to one of the alleged grounds of ineffective assistance – that trial counsel should have argued that petitioner was deprived of his right to testify before the grand jury – because petitioner had no right to appear before the grand jury.[2] As to the others, the trial court denied his ineffective assistance claim because the plea agreement that petitioner's counsel obtained was so favorable that

---

[1] Because petitioner's claims of ineffective assistance did not address the process by which he pled guilty, the state court could have rejected them on that procedural ground once it found that his plea was knowing and voluntary. See United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."). However, contrary to the District Attorney's argument, since the state courts did not invoke that state procedural bar, I will not rely on it either. See Harris v. Reed, 489 U.S. 255, 261–62 (1989) (the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" to justify a federal court applying the procedural bar) (internal quotation marks omitted); Garner v. Lee, 908 F.3d 845, 859 (2d Cir. 2018).

[2] The state court's holding on this is correct. The record suggests, at most, that petitioner may have been in custody prior to the grand jury proceedings on charges unrelated to the events as to which the grand jury ultimately indicted him. Under N.Y. Crim. Proc. Law § 190.50(5)(a), "[t]he district attorney is not obliged to inform such a person that such a grand jury proceeding against him is pending, in progress or about to occur unless such person is a defendant who *has been arraigned in a local criminal court upon a currently undisposed of felony complaint* charging an offense which is a subject of the prospective or pending grand jury proceeding." (Emphasis added). Petitioner thus had no right to appear before the grand jury because he had not been arrested on a felony complaint; rather, he was arrested on a post-indictment arrest warrant. Therefore, petitioner's trial counsel could not be constitutionally ineffective for failing to assert a right that petitioner did not have.

petitioner had not been prejudiced by accepting the plea agreement. The trial court noted that it had offered petitioner this plea agreement over the prosecution's strong objection:

> Your Honor, that [7 years' sentence] would be over our objection. The defendant did force his daughter, who is 15, into court to face him and testify against him. He's made attempts up until about two weeks ago to convince her not to testify against him. He didn't think that she would come in and she did and she was brave enough to go in front of him and I think giving him the maximum on one count when he is facing a multi-count indictment is far too low, especially given the fact that he is a convicted sex offender who was out for not even three months before he began abusing his biological daughter.

In fact, as the prosecutor later pointed out, petitioner was facing over 50 years in custody had he been convicted on the top count. Yet trial counsel, even at that late stage, was able to persuade the trial court to limit his sentence to seven years' custody. Thus, in denying petitioner's motion to withdraw his guilty plea prior to sentencing, the trial court held:

> [T]he defendant's argument that defense counsel was ineffective in representing him is without merit. The assistance of counsel was effective as is shown from the fact that the defendant received an extremely favorable plea offer from this court, which was over the People's objection. The defendant was charged with eight counts of Rape in the Second Degree and sixteen counts of Criminal Sexual Act in the Second Degree, class D violent felonies. As a second felony offender, if convicted on those top counts, the defendant could have been sentenced to seven years in jail on each count to run consecutively to each other. The defense counsel was able to get all the sentences of seven years on the class D felonies to run concurrently to each other and with the misdemeanor sentences to satisfy the entire indictment. This was a very generous offer from this court especially after the complainant who is the defendant's 15-year-old daughter was made to come to court and testify before the jury. As such, the defendant's argument that he should be allowed to withdraw his plea because his counsel's assistance was ineffective is without merit.

When petitioner again alleged ineffective assistance in a motion to vacate his guilty plea after sentencing and in a subsequent motion to vacate the judgment, the trial court used identical language in rejecting it.[3]

---

[3] The Appellate Division denied leave to appeal on the post-sentencing motions.

Because the state courts decided his ineffective assistance claim on the merits, my review is subject to the limitations of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 *et seq.* ("AEDPA").  AEDPA permits reversal only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent.  Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted).  A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations of constitutional issues.  See, e.g., White v. Wheeler, 577 U.S. 73, 76-77 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal

8

habeas relief for prisoners whose claims have been adjudicated in state court.'") (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013)).

In seeking to prove ineffective assistance of counsel, petitioner's burden is doubly difficult because he must prevail not only under the narrow AEDPA standard set forth above, but also under the similarly narrow two-prong standard for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668 (1984). Strickland's first prong requires him to show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks omitted). The second prong requires petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. In the context of challenging a guilty plea by reason of ineffective assistance of counsel, a petitioner must show that there is a reasonable possibility that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Petitioner does not come close to clearing the double-hurdle placed in his path by the combination of AEDPA's and Strickland's requirements. Petitioner's main attack on his lawyer is that his lack of preparation deprived petitioner of opportunities to cross-examine his daughter. For example, his lawyer could have found out, according to petitioner, that there were hospital and other records showing that on some of the days when his daughter testified he sexually

9

attacked her, she was in one place and he was in another.[4] Similarly, petitioner alleges that his daughter had made prior accusations and then recanted, which would have been a basis for cross-examining her.

The state court, however, was fully justified in concluding that even if petitioner had such cross-examination material, he failed to credibly show that it was so important that he would have rejected the highly favorable plea offer. In fact, rejecting the trial court's plea offer would have been foolhardy. Petitioner pled guilty to over 25 counts of raping, sexually abusing, and having improper contact with his daughter. The dates of the incidents in each count were alleged in the usual "on or about" manner. Together, they spanned incidents occurring from on or about February 14, 2014 through July 31, 2014. This happened when his daughter was only 13 years old, and her testimony occurred when she was 15 or 16 years old. It was undisputed that she was protected from petitioner by an Order of Protection prohibiting him from having contact with her during this period, and that he was already a convicted sex offender, stemming from a guilty plea for promoting a sexual performance by a child involving an ex-girlfriend's daughter.

Against this background, the "strategy" that petitioner is claiming that his trial counsel should have followed was to cross-examine his daughter by showing that she got some of the dates wrong, thus, hopefully, casting doubt on whether the multiple assaults happened at all. Putting aside the minefield of cross-examining a child victim about the dates of traumatic events occurring years before – as to which an objectively reasonable attorney could well find that there was more danger in doing than not doing – there was a very substantial chance that even if the

---

[4] Although petitioner refers to certain hospital or other records, the documents in the record do not support his claims that his counsel could have shown that it was impossible for them to be together on all the occasions on which his daughter alleged that she was assaulted. In fact, in an affidavit filed with the state court, petitioner admitted that he and his daughter lived together between April 25 and May 20, 2014, a period that overlaps with dates his daughter alleged sexual conduct occurred.

10

jury concluded that she may have erred as to some of the dates, the events she described actually occurred. Had the jury convicted him, he would have faced over 50 years in custody, instead of the seven he received under his plea deal. And with regard to petitioner's argument that his daughter had, in the past, made and then recanted other accusations, this is a common occurrence among victims of domestic violence, yet juries often understand the pressure on victims to recant and then reaccuse. See Nelson v. City of Stamford, No. 09-CV-1690, 2012 WL 601776, at *3 (D. Conn. Feb. 23, 2012) ("[A] person of reasonable caution would not accord great weight to [the victim's] recantation, given that victims of domestic violence often recant previously raised accusations of their abuse."); Jean v. City of New York, No. 09-CV-801, 2011 WL 4529634, at *5 (E.D.N.Y. Sept. 28, 2011), aff'd, 512 F. App'x 30 (2d Cir. 2013) (child's later recantation of abuse allegations was "not unusual").[5]

Conversely to petitioner's argument, any attorney advising petitioner not to take the seven-year deal under these circumstances may well have been constitutionally ineffective. Thus, the state court's conclusion that petitioner was not prejudiced by the alleged lack of

---

[5] The habeas corpus petition is interspersed with references to "actual innocence." Respondent characterizes some of the arguments using that term as having not been raised in state court, but they appear at most to be a repackaging of that part of petitioner's ineffective assistance claim which asserted that petitioner and his daughter were not in the same place at the time of some of the alleged assaults. Exhausted or not, I am denying any actual innocence claim for the same reason as the corresponding portion of the ineffective assistance claim – nothing in this record shows that petitioner and his daughter were in fact in different places during the alleged attacks. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Rhines v. Weber, 544 U.S. 269, 278 (2005) (a district court abuses its discretion if it grants a stay and abeyance to allow a petitioner to exhaust claims that are plainly meritless); see also Fernandez v. United States, 757 F. App'x 52, 56 (2d Cir. 2018) (claim of actual innocence was "plainly meritless" where petitioner did not support his argument "with evidence sufficient to demonstrate that 'it is more likely than not that no reasonable juror would have convicted him'"). As noted above, the dates petitioner admits he and his daughter lived together substantially overlap with the dates she stated incidents occurred.

preparation was not contrary to or an unreasonable application of Strickland or its Supreme Court progeny.[6]

### III. Defects in the grand jury proceedings

Petitioner contends that he had been deprived of his right to testify before the grand jury that indicted him, and that the prosecutor had coerced his daughter into testifying against him before the grand jury.

These issues cannot be heard on habeas corpus review. This is because petitioner pled guilty, and his conviction in a trial court supplants any error in the grand jury proceedings. See Hutchings v. Herbert, 260 F. Supp. 2d 571, 578 & n.2 (W.D.N.Y. 2003) (Petitioner's "guilty plea cured any defect in the grand jury proceeding caused by the State's alleged failure to give [petitioner] an opportunity to appear before that body. It necessarily follows as a matter of law that [petitioner] cannot establish that any errors made by his trial attorney with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation."). "Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." Davis v. Mantello, 42 F. App'x 488, 490 (2d Cir. 2002); see also Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); accord Martinez v. Artus, 2010 WL 1692454, at *6 (E.D.N.Y. Apr. 26, 2010). The Supreme Court has held that there is no federal right to indictment by a grand jury in state court, Hurtado v. California, 110 U.S. 516

---

[6] The habeas corpus petition arguably raises some new claims of ineffective assistance of trial counsel, as I cannot find them in the state court record. The District Attorney has referred to these as a claim that petitioner's trial counsel was "deliberately ineffective"; that his trial counsel "urged the trial court to charge defendant with perjury"; and that trial counsel told the trial court that petitioner had threatened him. To the extent petitioner is seeking to raise unexhausted claims, I reject them as plainly meritless. See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 278. I make that same ruling with regard to petitioner's claim that his trial counsel was "biased" towards him which, at most, was partially exhausted.

(1884), and thus habeas corpus review of whether the proceedings were properly conducted is unavailable, Robinson v. LaClair, 2011 WL 115490, at *8 (E.D.N.Y. Jan. 13, 2011).

## IV.     Brady violations

Petitioner alleges that the prosecution failed to produce the following exculpatory or impeachment material that should have been provided pursuant to Brady v. Maryland, 373 U.S. 83 (1987): (1) certain medical records of his allegedly showing that that he could not have been with his daughter on some of the dates on which he allegedly attacked her; (2) the instructions to the grand jurors; and (3) his daughter's psychiatric, ACS, and public records.

He exhausted these claims on direct appeal to the Appellate Division, in a motion to vacate judgment, a motion to withdraw his guilty plea, and a motion to reconsider the denial of both of those motions. The Appellate Division did not refer to the argument expressly, but held that "defendant's remaining contentions, raised in his pro se supplemental brief, are either forfeited by his guilty plea or without merit." White, 185 A.D.3d at 843, 125 N.Y.S.3d at 287. In denying the motion to withdraw his guilty plea, the motions court also did not expressly address the Brady arguments, but held that "any remaining arguments made by the defendant are similarly meritless." In denying the motion to vacate judgment, the motions court expressly rejected on the merits the Brady argument on the instructions to the grand jurors, and held that all other arguments were "similarly meritless and denied." The motions court also denied the reconsideration motion on the ground it was "based on the same argument as the previous motion, which was determined on the merits and denied. In any event, defendant's arguments are without merit." (Citation omitted). These decisions are sufficient to constitute an adjudication on the merits of the Brady claim. See Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir. 2004).

13

Because state courts decided this issue on the merits, my review is subject to the same narrow standard under AEDPA as set forth above. Measured against this tough standard, petitioner's claim fails. As to the grand jury instructions he seeks, those are simply not Brady material. Aside from that, petitioner's claim also fails at the threshold because neither his petition nor his state court submissions explain what other specific evidence he believes was withheld. See Chrysler v. Guiney, 14 F. Supp. 3d 418, 450 (S.D.N.Y. 2014) (collecting cases requiring petitioner to specify the withheld evidence), aff'd, 806 F.3d 104 (2d Cir. 2015). His description of this so-called Brady material is in broad, general categories, and reads more like a wish list of what he hopes might have been available or known to the prosecution rather than a specific let alone evidentiary showing that such information existed and was in the possession of the prosecution.

In addition, the Supreme Court has held that the Constitution does not require "preguilty plea disclosure of impeachment information," United States v. Ruiz, 536 U.S. 622, 629 (2002), and the Second Circuit has observed that there is no Supreme Court precedent requiring a prosecutor to disclose exculpatory evidence prior to a guilty plea, Friedman v. Rehal, 618 F.3d 142, 154-55 (2d Cir. 2010). Petitioner's Brady claim therefore fails to meet the standard for relief under AEDPA.

## CONCLUSION

The petition is denied and the case is dismissed. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status

is denied for the purposes of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**
                                  Digitally signed by Brian M. Cogan
                                  _____
                                                      U.S.D.J.

Dated: Brooklyn, New York
        July 30, 2021